CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
October 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARIL OLIVIA ST. JAMES, | ) |
| Plaintiff, | ) Case No. 7:25-cv-290 |
| v. | ) By:    Michael F. Urbanski |
| | ) Senior United States District Judge |
| DOUBLE NICKLE, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Pending before the court are plaintiff Maril Olivia St. James's motion to remand, ECF No. 8, and defendant Double Nickle, Inc.'s motion to dismiss for failure to state a claim. ECF No. 18. For the following reasons, St. James's motion to remand is **DENIED** and Double Nickle, Inc.'s motion to dismiss is **GRANTED**.

I.    Background

Defendant Double Nickle, Inc. ("DNI") employed plaintiff Maril Olivia St. James to work as a stagehand at the Berglund Center in Roanoke, Virginia. Compl. ECF No. 1-1, ¶¶ 5-6. DNI has a collective bargaining agreement with a labor union, International Association of Theatrical Stage Employees Local 55 ("the Union"), which governs the manner in which DNI procures production and show related labor from the Union "on an exclusive basis" "from time-to-time." ECF No. 16-2.[1] The complaint alleges that St. James began her employment

---

[1] Plaintiff St. James did not reference the collective bargaining agreement in her complaint. St. James does not dispute the existence of the agreement, but contends that it does not meet the requirements of a collective bargaining agreement and is not necessary for a determination of federal jurisdiction. Defendant DNI included a copy of the collective bargaining agreement as an attachment to the motion opposing remand, which was filed on the same day as defendant's motion to dismiss. ECF No. 16-2,

1

relationship with DNI in January 2016, ECF No. 1-1, ¶ 6, but in May 2024, DNI "refused to provide working hours" for St. James. Id. ¶ 16. Since July 2024, "DNI has provided no legitimate employment opportunities" for St. James, such that St. James "considers herself terminated from employment by DNI." Id. ¶ 18. The complaint alleges that this termination was retaliation against St. James for reporting what she believed to be unlawful conduct to her supervisor. Id. ¶ 25. St. James's sole cause of action is Virginia's whistleblower protection statute, which prohibits employers from discharging employees "because the employee . . . reports a violation of any federal or state law or regulation to a supervisor." Va. Code Ann. § 40.1-27.3(A)(1).

Following a non-work-related injury, St. James requested "to work at a reduced capacity" and asked for her paystubs from DNI so that she could submit an insurance claim for the injury. ECF No. 1-1, ¶ 8. St. James noticed that DNI management appeared reluctant to provide paystubs and pay rates to St. James. Id. ¶ 9. As a result, "on multiple occasions in 2024," St. James believed that "she was not being paid all that she was owed and that this was an intentional act on the part of DNI." Id. ¶ 10. She reported her "good faith belief" that she experienced "unlawfulness at the workplace" to her supervisor, based on DNI's failure to

---

18. "When a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)). Even though St. James did not explicitly rely on the collective bargaining agreement in the complaint, the existence of the agreement is integral to her cause of action and the court's determination of jurisdiction. Plaintiff's counsel admitted at oral argument that he was not aware that a collective bargaining agreement existed when he filed suit in state court on behalf of St. James. For the purposes of ruling on the pending motions, the court will consider the collective bargaining agreement despite its absence from the complaint.

2

provide payroll information or confirmation that she had been compensated for all hours worked. Id. ¶¶ 10-12.

Additionally, St. James reported to her supervisor that she was working in an unsafe environment. She felt that the attendees of concerts at the Berglund Center would be unsafe due to the "hanging and rigging of heavy lighting equipment." Id. ¶ 13. In April 2024, St. James reported "in good faith that she experienced unlawfulness at the workplace" and also reported her refusal to "work under conditions she considered to be unlawful and criminally neglectful." Id. ¶¶ 14-15.

In May 2024, DNI stopped providing working hours for St. James. Id. ¶ 16. When St. James felt that she was being "denied the opportunity to earn income," she raised the issue to her supervisor. Id. ¶¶ 16-17. In response, "DNI provided a small project for her in July of 2024." Id. ¶ 17. But since July 2024, "DNI has provided no legitimate employment opportunities" and St. James "considers herself terminated from employment by DNI." Id. ¶ 18. St. James alleges that DNI offered for her to "work at a pay cut with a demotion" but "when she inquired further about the specifics of the position, the offer was rescinded." Id. ¶ 18.

Based on these events, St. James sued DNI in the Roanoke City Circuit Court on March 28, 2025. DNI removed the action to this court on April 25, 2025. As grounds for removal, DNI maintained that St. James's state law whistleblower retaliation claim is completely preempted under 29 U.S.C. § 185 ("Section 301") of the Labor Management Relations Act ("LMRA") because a court will need to interpret the collective bargaining agreement under which St. James works. Notice of Removal, ECF No. 1 ¶ 2. St. James filed a motion to remand

3

the action back to state court, asserting that there is no need to interpret the collective bargaining agreement, and therefore no federal subject matter jurisdiction under the LMRA. ECF No. 8. DNI opposed the motion to remand, ECF No. 16, attaching a Declaration by DNI's director, ECF No. 16-1,[2] a copy of a collective bargaining agreement between DNI and the Union, ECF No. 16-2,[3] and a list of prevailing wage rates for 2022-2025. ECF No. 16-3. DNI then moved to dismiss the action for failure to state a claim. ECF No. 17.

The court first considers St. James's motion to remand.

## II. Motion to Remand

In order to rule on St. James's motion to remand, the court must determine whether her state law claim against DNI is completely preempted by Section 301 of the LMRA and thus subject to federal subject matter jurisdiction.

### A. Standard of Review

State court actions that originally could have been brought in federal court may be removed pursuant to 28 U.S.C. § 1441. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

---

[2] The Declaration of Gregory A. Huffman, ECF No. 16-1, accompanied the defendant's response in opposition to motion to remand. ECF No. 16. Huffman is a Director of DNI. ECF No. 16-1 ¶ 2. Huffman explained, "Employees are referred by the Union, in accordance with the referral process set forth in the CBA, to work on an intermittent basis for DNI's clients. The duration of a referral may be brief as a few hours or span several days, depending on the nature of event and the employee's role in it. When the employee's assignment is complete, DNI's employment relationship with the employee is terminated until such time as the employee is again referred by the Union." Id. ¶ 5.

[3] The Collective Bargaining Agreement, ECF No. 16-2, accompanied the defendant's response in opposition to motion to remand. ECF No. 16. The agreement outlines the referral process in which the Union refers employees to DNI. ECF No. 16-2 at 2. In relevant part, the agreement states that DNI must place all calls for employees with the Union; the Union has the ability to remove an employee for cause; the Union will make its best effort to provide specifically requested employees by the Employer; the Union may remove employees who fail to provide the services required by the Employer. Id. Further, the agreement outlines the process of dispute resolution between the Union and DNI pertaining to an alleged breach of the agreement. Id. at 9.

4

When removal is challenged, the defendant "carries the burden of . . . demonstrating the court's jurisdiction over the matter." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). Courts must strictly construe removal jurisdiction, and if federal jurisdiction is doubtful, remand to state court is required. See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 260 (4th Cir. 2005).

## B. Analysis

In her motion to remand, St. James primarily asserts that resolution of her case does not require interpretation of the collective bargaining agreement, and thus there is no federal subject matter jurisdiction under the LMRA. But in addition to her argument that there is no need to interpret the collective bargaining agreement, she disputes that the agreement at issue is even a valid collective bargaining agreement at all. ECF No. 8.

### 1. The Collective Bargaining Agreement

A collective bargaining agreement is "a contract between an employer and a labor union regulating employment conditions, wages, benefits, and grievances." Collective-Bargaining Agreement, Black's Law Dictionary (12th ed. 2024). Section 8(a)(5) of the National Labor Relations Act defines the "mutual obligation" of employers and unions to bargain collectively as a duty to "confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . and the execution of a written contract incorporating any agreement reached." 29 U.S.C. § 158(d). The written contract resulting from any agreement or negotiation is subject to basic contract principles: "An agreement must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential

5

commitments and agreements with respect thereto." Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C., v. Rustam Guiv Foundation of N.Y., 822 F.3d 739, 752 (4th Cir. 2016). "In practical terms, a contract must be sufficiently definite to enable a court to give it an exact meaning, and must obligate the contracting parties to matters definitely ascertained or ascertainable." Id. (citations omitted).

A union that has been "designated or selected for the purposes of collective bargaining by the majority of the employees . . . shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a).

St. James acknowledges that the Union is the exclusive representative of the employees of DNI, but asserts that the Union was not duly elected or recognized to negotiate a collective bargaining agreement and the agreement does not include sufficiently definite details about conditions of employment in order to be treated as a valid collective bargaining agreement. Id. ¶¶ 34-42.

The collective bargaining agreement in this case includes ample discussion of wages, hours, and conditions of employment. It specifies hourly rates by job position, and the supplements to the agreement contain job descriptions and the prevailing wage rates for each position for 2022-2025. See ECF No. 16-2, at 4; ECF No. 16-3. Further, the collective bargaining agreement describes the payment of premium rates for specific types of work as well as payment for employees in specific positions or classifications. See ECF No. 16-2, at 5. There is a discussion of overtime rates and the circumstances that would justify such pay, including for work on holidays and overnight. Id. at 6. That section also describes the

6

minimum call times for which employees must be compensated. Id. The agreement outlines meal periods, break periods, and periods of rest between shifts. Id. at 8.

The agreement also permits DNI to instruct the Union to remove a referred employee "for cause," but requires DNI to "provide written documentation regarding deficiencies in work" and directs DNI to allow the Union "to correct or provide training to allow the employee to return to work." Id. at 2.

Finally, the last section of the agreement establishes a dispute resolution process. If the Union or DNI believes that there has been a breach of a specific provision of the agreement, it should put the dispute or complaint in writing within fifteen business days of the incident, "specifying the facts, the specific provision alleged to be violated, and the relief requested." Id. at 9. The complaining party's representative is to sign the written complaint and present it to the other party's representative. Id. The responding party is to answer the written complaint in writing within ten business days. Id. If the dispute is not resolved within fifteen business days of the response, the dispute is to be referred to arbitration. Id.

Ultimately, the agreement between DNI and the Union in this case meets the basic definition of a collective bargaining agreement and is sufficiently definite to be enforced.

In any event, for the purposes of Section 301, a labor contract need not be a "collective bargaining agreement" per se. See Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 25-28 (1962) ("It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them."); see also Beidleman v. Stroh Brewery Co., 182 F.3d 225, 231 (3d Cir. 1999); 20 Williston on Contracts § 55:1 (4th ed.) (explaining that courts look at several factors to

7

determine that an agreement between a union and an employer is a collective bargaining agreement, including "the union's continued status as the majority representative, the purpose of the new agreement being to establish labor peace rather than merely to confer benefits on a small group of employees, and the resolution of any controversy arising out of the employment relationship by the execution of the agreement").

### 2. Preemption under Section 301 of the LMRA

DNI argues that St. James's claim of retaliatory termination under Virginia Code Section 40.1-27.3 is preempted under Section 301 of the LMRA because a court will need to interpret the collective bargaining agreement governing St. James's employment to determine whether St. James has met the essential elements of her retaliation claim. ECF No. 16.

Section 301 authorizes federal courts to hear suits for violations of contracts between an employer and a labor organization or between labor organizations. 29 U.S.C. § 185(a). Section 301 grants jurisdiction to federal courts to hear employment disputes covered by collective bargaining agreements and additionally "directs federal courts to fashion a body of federal common law to resolve such disputes." McCormick v. AT&T Techs., Inc., 934 F.2d 531, 534 (4th Cir. 1991). Section 301 preempts any state law claims which require the interpretation of a collective bargaining agreement. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988). "Thus, the question in preemption analysis is not whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement." McCormick, 934 F.2d at 535.

"[M]ere parallelism between the facts and issues to be addressed under a state law claim and those to be addressed under § 301 does not render the state-law analysis dependent on

8

the collective bargaining agreement." Id. If "the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Id.; Lingle, 486 U.S. at 410. But, if interpretation of the collective bargaining agreement is necessary to resolve the state law claim, Section 301 preempts the claim and it must be heard in federal court.

To determine whether resolution of the state law claim advanced by a plaintiff requires interpretation of the collective bargaining agreement and is subject to preemption by § 301, the court must examine the elements of the state law cause of action. See McCormick, 934 F.2d at 535; Lingle, 486 U.S. at 406.

"Where wrongful conduct is alleged, and that conduct occurred pursuant to rights and duties under a [collective bargaining agreement], § 301 preempts claims arising out of that conduct." Martin v. Watkins, No. 7:10-cv-00423, 2011 WL 836996, at *3 (W.D. Va. Mar. 3, 2011).

In McCormick, plaintiff's employer cleaned out plaintiff's work locker following his termination, removing company-issued tools and discarding his personal belongings, which included a personal letter. McCormick, 934 F.2d at 533. When plaintiff's termination was later rescinded and he returned to work, he was subjected to remarks about the letter from coworkers who had retrieved it from the trash. Id. Plaintiff left the building later that evening and never returned, but filed tort claims in Virginia state court, including intentional and negligent infliction of emotional distress based on the comments about the letter in plaintiff's locker. Id. The employer removed the case to federal court, arguing that the federal court had original jurisdiction pursuant to Section 301 of the LMRA, and plaintiff sought a remand to

9

state court. Id. at 534. The district court and Fourth Circuit both held that preemption was proper because interpretation of the collective bargaining agreement was necessary to resolve the tort claims. Id. at 538.

The tort claims at issue each required that the plaintiff prove some sort of wrongful conduct. Id. at 535. But "[w]hether the actions of management personnel in disposing of the contents of McCormick's locker were in any way wrongful simply cannot be determined without examining the collective bargaining agreement to ascertain the extent of any duty AT&T may have owed him." Id. at 536. The court explained: "Cleaning out a locker is not a matter of intrinsic moral import but a question of legal authority—whether management had the lawful right to proceed as it did." Id. "The rightness or wrongness of the action has not been committed to the common law of tort, but to the legal arrangements embodied in a contractual agreement, in this case through collective bargaining." Id.

While the collective bargaining agreement in McCormick did not mention lockers specifically, the issuance of work lockers was part of the conditions of employment subject to the collective bargaining agreement. Id. The Fourth Circuit held that "[t]he specifics as to management conduct regarding the lockers and tools need not be spelled out in all their detail and refinement for the collective bargaining agreement to be applicable." Id. "Rather, the collective bargaining agreement consists, in addition to its express provisions, of an 'industrial common law—the practices of the industry and the shop—which is equally a part of the collective bargaining agreement although not expressed in it.'" Id. (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960)). The court concluded, "Here, interpretation of the collective bargaining agreement is essential to

Case 7:25-cv-00290-MFU-CKM    Document 28    Filed 10/17/25    Page 11 of 18
Pageid#: 231

determine whether and to what extent AT&T owed McCormick a duty concerning his work locker." McCormick, 934 F.2d at 536-37.

At oral argument, plaintiff's counsel posited that Jackson v. Kimel, 992 F.2d 1318, 1326 (4th Cir. 1993), relaxed the wide-ranging preemption suggested by the Fourth Circuit in McCormick, but that argument is misguided. In that case, Jackson claimed intentional infliction of emotional distress against her former supervisor, Kimel, for coercing her into having sex with him by threatening to withhold certain work-related assistance and by impliedly threatening to terminate her employment. Id. at 1321. After removal to federal court on Section 301 LMRA preemption, the district court dismissed the case for failure to exhaust under the collective bargaining agreement. Id. at 1320. The Fourth Circuit reversed, noting that "[r]eference to the collective bargaining agreement [was] not necessary to determine whether Kimel's conduct was extreme and outrageous." Id. at 1326.

"[Kimel's] conduct, if it occurred as alleged, is wrongful regardless of whether it was authorized by the collective bargaining agreement. The 'coerced-sex-in-exchange-for-job-benefits' Jackson alleged is wrongful under federal law, against the public policy of the state of North Carolina, and arguably a violation of the criminal laws of the state." Id. (citations omitted). "Nothing in the collective bargaining agreement could authorize Kimel to coerce sexual favors in exchange for employment benefits. Indeed, if the collective bargaining agreement did authorize such actions, it would not be enforceable as against public policy." Id. The Jackson court concluded, "[i]n this case, interpretation of the collective bargaining agreement is not necessary to determine whether Kimel owed a duty to refrain from the alleged

11

conduct; the collective bargaining agreement could not authorize his alleged behavior." Id. at 1327.

Therefore, Jackson does not change the legal standard articulated in McCormick, and its facts are distinguishable from those of the present case. While interpretation of the collective bargaining agreement was unnecessary to ascertain the wrongful nature of the sexual conduct in Jackson, it is necessary in this case to determine the circumstances under which St. James was scheduled for work and the nature of DNI's termination of St. James.

An examination of the state law cause of action St. James advances makes this apparent. See McCormick, 934 F.2d at 535. St. James maintains that DNI's termination of the employment relationship was retaliatory and violative of Virginia Code Section 40.1-27.3. Under this law, "[a]n employer shall not discharge . . . an employee, or take other retaliatory action . . . because the employee . . . in good faith reports a violation of any federal or state law or regulation to a supervisor." Va. Code Ann. § 40.1-27.3(A)(1). For St. James to prevail on a wrongful termination claim, she must show that DNI took adverse action against her because she engaged in protected activity. More pointedly, she must show that DNI denied her work opportunities in response to her reports of unlawful activity to her supervisor. Given that St. James's employment relationship with DNI was on an as-needed basis and facilitated by the Union, proving termination of this employment relationship requires a review of the "legal arrangements" within the Union's agreement with DNI—the collective bargaining agreement. See McCormick, 934 F.2d at 535.

There are several provisions in the collective bargaining agreement between DNI and the Union which are relevant to the resolution of employee complaints such as St. James's.

The agreement establishes that DNI is to place referral calls with the Union when DNI needs employees for particular jobs, and "the Employer shall not notify the employees of the union, individually or directly, but in all cases shall place the call with the Union representative." Agreement, ECF No. 16-2 at 2. Further, "Union shall make its best effort to provide employees requested by the Employer, when available." The agreement specifies the hourly labor rates for each type of position, including "Stagehand," which is the position St. James routinely served for DNI. Id. at 4. The agreement also provides that "[u]pon proper notification by the Employer, Union shall remove an employee for cause." Id. at 2. In addition, the agreement states that the Union and DNI will each designate representatives who will attempt to adjust "any dispute arising out of this Agreement." Id.

The collective bargaining agreement here, as in McCormick, incorporates "the practices of the industry" beyond the express provisions in the agreement. 934 F.2d at 536. Resolution of St. James's wrongful termination claim requires a review of the terms on which she was entitled to work for DNI and the Union's practices in administering the referral process. Whether St. James was denied employment opportunities to which she was entitled, and the role DNI played in the denial, cannot be determined without an examination of the collective bargaining agreement's referral process and the Union's practices in managing it.

Therefore, the court holds that interpretation of the collective bargaining agreement between DNI and the Union is required in order to examine whether St. James was in fact terminated in response to her whistleblowing activity. St. James's claim of retaliatory termination cannot be resolved without interpreting the collective bargaining agreement.

13

Under McCormick, the need for this analysis dictates that the state law claim is preempted by Section 301, and this claim must remain in federal court.

For these reasons, the motion to remand is **DENIED**. The Court next turns to DNI's motion to dismiss.

### III. Motion to Dismiss

#### A. Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726,

14

730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

### B. Analysis

DNI contends that because St. James's action is completely preempted by § 301 of the LMRA, it should be dismissed as time-barred. DNI further argues that St. James's claim must be dismissed for failure to exhaust her contractual remedies under the collective bargaining agreement as well as failure to allege that the Union breached its duty of fair representation.

#### i. Timeliness of Claim

St. James's claim is subject to dismissal because it is time-barred. This suit is governed by the six-month limitations provision of NLRA § 10(b). See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169-72 (1983) (holding that breaches of collective bargaining agreements are often also unfair labor practices which are covered by the NLRA's six-month period for filing unfair labor practice charges); see also 29 U.S.C. § 160(b).

At oral argument, plaintiff's counsel conceded that application of Section 301 preemption would end this case as St. James did not file her complaint within the six-month statute of limitations. St. James "consider[ed] herself terminated" from DNI as of July 2024, and did not file suit until March 28, 2025. Given that nearly eight months elapsed between St. James's termination and the filing of the complaint, her suit is time-barred. See Green v. Brennan, 578 U.S. 547, 556 (2016) (holding that the limitations period begins to run at the time of the discharge in cases of either constructive discharge or actual discharge).

#### ii. Failure to Exhaust Contractual Remedies

15

Even if St. James had timely filed this suit, her claim is still subject to dismissal because she failed to exhaust her contractual remedies under the collective bargaining agreement. "Individual employees may assert § 301 claims; however, a union must be given the opportunity to act on behalf of its member before he may proceed on his own." Amburgey v. Consolidation Coal Co., 923 F.2d 27, 29 (4th Cir. 1991) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965) ("As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.")). Where there are established procedures for dispute resolution in the collective bargaining agreement, "the employee must at least attempt to exhaust exclusive grievance and arbitration procedures" before filing suit in court. Vaca v. Sipes, 368 U.S. 171, 184 (1967). But "if the wrongfully discharged employee [her]self resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." Id.

St. James has alleged no facts indicating that she attempted to initiate a grievance with the Union as delineated by the collective bargaining agreement. St. James instead argues that the collective bargaining agreement provides no right of an employee to initiate a grievance at all, asserting that this right is reserved only to the Union or DNI.

While this may have been St. James's understanding, the language of the collective bargaining agreement does not foreclose the possibility of an employee initiating a complaint. The agreement indicates that fifteen days following the alleged incident, "it shall be reduced to writing and signed by the complaining party's designated representative and be presented

16

to the other party's designated representative." ECF No. 16-2 at 9. This first step, putting the complaint and the details of the incident in writing, is a step that can be completed by the complaining employee. The employee would present the documentation of the incident to the Union representative, who would then sign it and present it to DNI's representative. Furthermore, an employee could ask the Union representative to "reduce[] [the dispute or complaint] to writing" on her behalf.

Therefore, an employee has the ability under the collective bargaining agreement to initiate a complaint and St. James has not alleged that she attempted to utilize these grievance procedures before she filed this lawsuit.

### iii. Failure to Allege Union Breached Duty of Fair Representation

St. James's failure to exhaust the grievance procedures within the collective bargaining agreement may be excused if the Union breached its duty of fair representation in its handling of St. James's grievance. See Vaca v. Sipes, 386 U.S. 171, 186 (1967) (explaining that an employee may seek judicial enforcement of his contractual rights where "the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance"). If the union "representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee may allege that resort to contractual remedies would have been futile. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983).

But St. James has not alleged that the Union failed to advocate on her behalf or breached any duty of fair representation. She has not alleged that use of the grievance

17

procedure would be futile. She also did not allege that the Union representative ignored any request to file a complaint on her behalf, or that she even made such a request. Absent allegations that the Union breached its duty of fair representation, her Section 301 claim cannot proceed.

## IV. Conclusion

Accordingly, the court **DENIES** plaintiff's motion to remand this action to state court and **GRANTS** defendant's motion to dismiss plaintiff's action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

An appropriate order will be entered.

Entered: October 17, 2025

Michael F. Urbanski
Senior United States District Judge